UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

BRENDA COMBS,
    PLAINTIFF

VS.                                 Case No. 1:15-cv-379

INTERNATIONAL MEDICAL GROUP, INC.,
    DEFENDANT

## COMPLAINT AND JURY DEMAND

Plaintiff, Brenda Combs, by counsel, complains against the defendant, International Medical Group, Inc. ("IMG"), as follows:

### Nature of the Case

1.  Combs brings this action against her former employer, IMG, under the Americans With Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, and under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

### Jurisdiction and Venue

2.  Jurisdiction is conferred on this Court and invoked under 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(2).

3.  Venue is proper in the Southern District of the State of Indiana, Indianapolis Division, under 28 U.S.C. § 1391(b), because the unlawful employment practices described herein were committed within this judicial district.

4.  Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 2611(4)(A) at all times relevant to this action.

5.  Combs was an "employee" within the meaning of 42 U.S.C. § 12111(4) and 29 U.S.C. § 2611(2)(A).

6.   Plaintiff Combs is an individual with a disability under the ADA, 42 U.S.C. § 12102(1)(A), and/or an individual with a record of a disability under the ADA, 42 U.S.C. § 12102(1)(B), and/or an individual regarded as having a disability under the ADA, 42 U.S.C. § 12102(1)(C).

7.   Plaintiff Combs was a "qualified individual with a disability" at the time of and prior to her termination under the ADA, 42 U.S.C. § 12111(8).

8.   Plaintiff Combs also suffered from a serious health condition as defined by the FMLA.

## Administrative Exhaustion

9.   Section 107(a) of the ADA, 42 U.S.C. § 12117, incorporates by reference §706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5, and all conditions precedent to jurisdiction under 42 U.S.C. §2000e-5(f)(3), have occurred or been complied with.

10.   Combs satisfied her obligation to exhaust her administrative remedies by timely filing Charge of Discrimination No. 470-2014-01315  with the United States Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

11.   The EEOC issued a Notice of Right to Sue on December 5, 2014.

12.   This complaint was filed within 90 days of Combs' receipt of the EEOC's Notice of Right to Sue.

## Parties

13.   Plaintiff Combs is a resident of the State of Indiana, and has resided in the State of Indiana at all relevant times.

14. Defendant IMG is an Indiana corporation with offices located at 2960 North Meridian Street, Indianapolis, Indiana 46208, within the geographical boundaries of the Southern District of Indiana.

**Factual Allegations**

15. Plaintiff Combs was hired by defendant IMG on or about October 23, 2000, in a clerical position.

16. In 2010, Combs began processing "Universal Rx" claims.

17. Prior to her termination, Combs was offered and accepted a claims processor position, which was in addition to her clerical duties. Combs was being trained in the claims processing position at the time of her termination from IMG.

18. At all relevant times of employment Combs met or exceeded IMG's legitimate performance expectations.

19. Combs is a qualified individual with a disability, has a record of a disability and/or is perceived by IMG to be disabled as these terms are defined by the ADA.

20. Combs was diagnosed with high blood pressure in 2007, diabetes in 2008, a hiatal hernia and Barrett's esophagus in 2012, and gastro paresis in 2013.

21. She also suffers from chronic anxiety, as noted by her doctor in December of 2013, as part of Combs' FMLA certification.

22. Combs' conditions cause intermittent nausea, vomiting, and abdominal pain which intermittently prevents her from working.

23. Beginning in 2007, Combs' physical condition was known to her supervisors, who recognized that Combs' was frequently sick and had frequent doctors' appointments.

24. When Combs' supervisor(s) became aware of her disability(s), they accommodated her disabilities by allowing her the time she needed to recover and visit doctors.

25. Combs attempted to make-up the time she missed and was always willing to work overtime.

26. In November of 2013, Combs was informed that the manager of her department at IMG would be changed from Kristin Arnold, Manager of Quality Assurance, to Tammie Peters, Vice President, Claims & Customer Care.

27. On November 15, 2013, Combs had a meeting with her new supervisor, Tammie Peters, and Dawn Knipe, Director, Claims and Customer Care.

28. At the November 15, 2013 meeting, Combs informed her managers that she was sick, has frequent doctors' appointments, and is periodically late to work.

29. Combs asked Knipe and Peters if that was a problem.

30. Combs' managers asked her what was wrong with her.  Knipe stated further that Combs looked fine and should stay off WebMD.

31. At a subsequent meeting in November with Dawn Knipe, Combs informed Knipe that Combs had upcoming doctors' appointments.  Knipe responded that Combs would need documentation because Combs did not look sick.  Knipe also added that  Combs could no longer make up the time spent at doctors' appointments, but would need to use her personal time, instead.

32. In late November of 2013, Dawn Knipe had a department meeting during which she informed the IMG employees under her supervision that they needed to complete an "Emergency Contact Information" form, including each employee's medical

conditions.  Knipe added that she intended to hang the form on each employee's desk, make a copy for herself, and send one to the IMG Human Resources department.

33. The "Emergency Contact Information" form was updated in January of 2014, at Dawn Knipe's request, again with medical information and three copies of the form—one to be left at each employee's desk, one for Dawn Knipe, and one for IMG's Human Resources department.

34. During her employment, Combs' annual evaluations have been satisfactory or better.

35. Combs' evaluation on December 3, 2013, was between "satisfactory" and "very good."

36. On December 10, 2013, Combs application for intermittent leave under the FMLA was granted.

37. Thereafter, Dawn Knipe would question Combs when she was late or needed to leave work for a doctors' appointment, asking her in front of co-workers if it was FMLA-related or for another reason.

38. On or about February 5, 2014, Combs complained to IMG's Vice President of Human Resources, John Sebastian, about Knipe's comments to her about her FMLA leave, often in front of co-workers.  Sebastian responded that it was Combs' word against management's.

39. On or about February 10, 2014, Combs sent Knipe an email about a doctor's appointment that was FMLA-related.  Knipe asked if Combs simply wanted to leave early and directed her to go through Amy Ford, Supervisor of Group Claims.

40. On February 13, 2014, Combs came to work, but became ill and went to the lower level restroom where she vomited.  Combs planned to go home, change clothes, and return to work.  She texted co-worker, Jenny Harlan, and asked her to bring Combs her purse and coat.  While she was waiting, Combs called Dawn Knipe to let her know Combs' status and ask her to clock Combs out.

41. Combs went home, changed, and returned to work.  Upon returning, Combs' direct supervisor, Amy Ford, asked Combs why she did not text Ford for her purse and coat.

42. Combs started to work on claims and sent Amy Ford an email asking if Combs could attend scheduled training another day, since she was not feeling well.

43. Around 2:45 p.m. that afternoon, Combs was again in the lower-level restroom vomiting, with stomach pain.  She again texted co-worker, Jenny Harlan, who told her that Dawn Knipe was looking for her.

44. Combs returned to her floor, where she was met by Dawn Knipe and Tammie Peters, who directed her to go into a conference room for a meeting which included Kristin Arnold and Amy Ford.

45. Combs was then berated by Tammie Peters for allegedly not respecting her manager, Amy Ford.  Peters then told Combs to go home because Combs was sick.

46. Combs went to her desk to print an email she had sent to Dawn Knipe about Combs' training.  Knipe demanded the email, Combs refused, and then attempted to see Vice President, Kathy Schutte.  Combs was prevented from doing so by Tammie Peters, who insisted that Combs go home.  Combs did so.

47. On February 17, 2014, Combs was called into a meeting with John Sebastian, Vice President of Human Resources, Tammie Peters, Vice President, Claims & Customer Care, and Dawn Knipe, Director, Claims and Customer Care, during which Combs was informed that she was being terminated for insubordination.

**Legal Causes of Action**

**COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

48. Combs incorporates paragraphs 1 through 47 by reference.

49. Combs was at all relevant times a qualified individual with a disability under the ADA.

50. Combs was at all relevant times capable of performing the essential functions of her job with a reasonable accommodation.

51. Defendant IMG's actions violated the ADA when it refused to accommodate her disabilities as it had previously by allowing her time for nausea and doctors' appointments.

52. IMG's actions violated the ADA when it terminated Combs's employment.

53. As a result of IMG's adverse employment actions Combs has been damaged.

**COUNT II – RETALIATION – AMERICANS WITH DISABILITIES ACT**

54. Combs incorporates paragraphs 1 through 53 by reference.

55. Defendant IMG terminated Combs in retaliation for her requesting a reasonable accommodation and/or in retaliation for her exercising statutorily–protected conduct.

56. IMG's actions were intentional, willful, and done in reckless disregard of Combs' ADA rights.

## COUNT III – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

57. Combs incorporates paragraphs 1 through 56 by reference.

58. Defendant IMG interfered with Combs' substantive FMLA rights by questioning her need for and use of intermittent leave.

59. IMG shared personal health information with Combs' co-workers without a need to know that information in the performance of their job duties.

60. IMG terminated Combs in retaliation for asserting her rights under the FMLA.

61. IMG's actions were intentional, willful, and in reckless disregard of Combs' rights under the FMLA's anti-retaliation provisions.

### Relief Requested

WHEREFORE, plaintiff respectfully requests that this Court: enter judgment for Combs as follows:

(a) Award Combs back pay, bonuses, and fringe benefits in an amount to be determined at trial;

(b) Award Combs compensatory, liquidated, and punitive damages in an amount to be determined at trial;

(e) Award Combs pre- and post-judgment interest, costs and attorney's fees;

(f) Reinstate Combs to the same or a comparable position, and;

(g) Grant such further relief as the Court may deem just and proper.

### Jury Demand

Under Fed.R.Civ.P. 38(b), Combs demands a trial by jury.

Respectfully submitted,


/s/ Michael J. Cork
Michael J. Cork (IN 11760-49; IL 0518395)
BAMBERGER, FOREMAN, OSWALD & HAHN, LLP
201 N. Illinois Street, Suite 1225
Indianapolis, IN  46204-4219
Ph:  (317) 464-1594
Fax:  (317) 464-1592
Email:  mcork@bamberger.com
ATTORNEY FOR PLAINTIFF, BRENDA COMBS


L:\LIB\DOCS\62670\COMPLAIN\1577860.DOC